[No. F023888. Fifth Dist. Sept. 30, 1996.]

GLENN H. KNOWLES et al., Plaintiffs and Appellants, v.
TEHACHAPI VALLEY HOSPITAL DISTRICT, Defendant and
Respondent.

COUNSEL

Young Wooldridge and Larry R. Cox for Plaintiffs and Appellants.

Hillsinger & Costanzo, George Hillsinger and Sarah Yoseloff for Defendant and Respondent.

OPINION

**VARTABEDIAN, J.**—This is an appeal from judgment after a defense verdict in a medical malpractice action. Appellants are the surviving spouse and adult children of the deceased, Paula Knowles (Knowles). They contend the trial court failed to afford proper significance to a stipulated judgment against one of the defendants, thereby prejudicing their right to recover damages from another defendant, the respondent Tehachapi Valley Hospital District. Appellants also contend the trial court committed prejudicial error in permitting respondent to introduce impeachment evidence that tended to suggest that Knowles's treatment at another hospital was the cause of her death. We conclude the trial court treated the stipulated judgment correctly and that any error in admitting the evidence of treatment at another hospital was not prejudicial. We affirm the judgment.

*Facts and Procedural History*

We summarize the evidence in the light most favorable to the verdict, noting conflicting evidence where relevant to the issues on appeal.

Paula Knowles consulted an internist about lower abdominal pain and severe weight loss she was experiencing. After a CAT scan showed the

presence of an indeterminate pelvic mass, the internist referred Knowles to a surgeon, defendant Gary Olsen, for exploratory surgery. Knowles also asked that Olsen perform a hysterectomy as part of the surgery. Olsen, a private practitioner, had staff privileges at respondent's hospital.

On June 5, 1990, Olsen performed the surgery at the hospital. Knowles remained in the hospital until Olsen discharged her on June 10, 1990. That night, after she went home, Knowles was apparently in great pain. She took significant quantities of several different drugs, including pain medications and antidepressants. About 5 a.m. on June 11, 1990, Knowles lost consciousness and stopped breathing. Her husband revived her following instructions from a 9-1-1 emergency operator. Paramedics transported Knowles back to the hospital and Olsen was summoned by the emergency room staff.

Olsen diagnosed the problem as drug overdose and ordered treatment accordingly. Knowles showed no improvement over the course of the day, so Olsen decided to transfer her to a hospital that had an intensive care unit, Bakersfield Memorial Hospital.

By the time she arrived there about 5 p.m., Knowles had an extremely distended abdomen and was in critical condition. A doctor at the Bakersfield hospital diagnosed a perforated bowel; he requested surgery to try to locate the problem. This subsequent surgery revealed that Knowles had a hole in her stomach wall, resulting in massive infection of her abdominal cavity. After the surgery, Knowles remained in guarded condition.

Her condition continued to deteriorate.[1] Her liver and kidneys began to fail and her lungs continued to fill with fluid. She suffered a stroke. The Bakersfield doctors determined that a tracheostomy was necessary to permit Knowles's long-term intubation and to address the lung condition. This surgery was performed on June 20, 1990. While being returned to the recovery room, Knowles was not given supplemental oxygen, as she had been in the operating room. After this problem was discovered, she was revived and suffered no significant injury from the oxygen deprivation. The course of treatment at Bakersfield Memorial Hospital was not successful in controlling the problems caused by the infection.

On June 28, 1990, Knowles was transferred to a hospital in Salt Lake City, where she died on July 13, 1990. On August 21, 1991, appellants filed their complaint against respondent and Olsen.

---

[1]The recitation of facts in this paragraph was not before the jury as affirmative evidence; rather, this evidence was introduced for purposes of impeachment only.

The complaint contained fictitious name allegations, and on October 23, 1992, the complaint was amended to substitute Bakersfield Memorial Hospital and anesthesiologist Ghanim Elias, M.D., as defendants. By notice of motion dated May 4, 1993, Bakersfield Memorial Hospital moved for summary judgment. Dr. Elias joined in the motion. Neither appellants nor any remaining defendant opposed the summary judgment motion. The court granted summary judgment on June 15, 1993, finding that there was no evidence of any "negligent or otherwise wrongful act or omission" on the part of Bakersfield Memorial Hospital agents or employees. The court also found there was no act or omission on the part of Dr. Elias "which proximately caused or contributed to the death of plaintiffs' decedent or otherwise caused any damages."

Trial on the single count of negligence against respondent and Olsen was scheduled for July 14, 1993. On that day, appellants and Olsen orally stipulated to entry of judgment against Olsen. Olsen stipulated that he "was negligent in connection with the care and treatment [of Knowles] and that said negligence was a legal cause of injury to the plaintiffs herein . . . ." The stipulation provided for an award of damages against Olsen "in an amount equal to the total net damages, if any, found by the trier of fact after rendition of the special verdict in this matter . . . ." The stipulation also contained appellants' covenant not to record or execute upon the judgment. Both parties agreed not to talk to the media about the stipulation. Finally, Olsen represented that he had no medical malpractice insurance that would cover any damages award,[2] and he agreed to submit a declaration that he "does not have assets sufficient to cover any judgment that may have been rendered against him, if one there had been . . . ." Judgment was entered in accordance with the stipulation made orally before the court. (See Code Civ. Proc., § 664.6.)

Trial against respondent proceeded on a theory that respondent had been negligent in permitting Olsen to operate at the hospital without sufficient skill and without viable malpractice insurance. (See *Elam* v. *College Park Hospital* (1982) 132 Cal.App.3d 332 [183 Cal.Rptr. 156].)[3] Accordingly, respondent moved for bifurcation of the trial. The court granted the motion. The first portion of the trial was to address only the issue of Olsen's negligence. Thereafter, a second portion would address the *Elam* negligence allegations.

[2]Olsen had obtained malpractice insurance through a West Indies company that had absconded with the premiums and ignored his demand for coverage and legal representation.

[3]*Elam* v. *College Park Hospital, supra,* 132 Cal.App.3d at page 341 held that a hospital has a duty to exercise reasonable care in selecting, reviewing and periodically evaluating the competency of the doctors it permits to treat patients within the hospital.

The parties then addressed the impact on the first trial of the stipulated judgment against Olsen. Appellants asserted there should not be a trial on the negligence issue at all; they argued the judgment was res judicata on this issue. If there was to be a trial, they contended, the judgment should operate to establish their prima facie case and to preclude Olsen from testifying that he was not negligent. Respondent contended the judgment should have no effect at all, since respondent was not a party to the judgment. The trial court concluded that the judgment shifted the burden of proof to respondent on the issue of Olsen's negligence, and that the judgment itself was admissible as an admission of Olsen. However, the court determined the negligence issue was one for the jury and that Olsen could testify as a witness for respondent.

As a result of these rulings, respondent put on its case first. Olsen testified for respondent, stating that he had not been negligent in providing care to Knowles. He said financial constraints, arising from the failure of the malpractice insurance company to respond on his behalf, led him to enter into the stipulated judgment. Respondent presented other expert testimony supporting its position that Olsen had not been negligent. Appellants submitted contrary expert testimony supporting the view that he was negligent, and respondent presented rebuttal testimony from another medical expert witness.

The jury returned a special verdict on July 30, 1993. They found, in response to question 1, that Olsen was not negligent. As instructed, they therefore did not reach question 2, whether Olsen's actions were a proximate cause of Knowles's death. After extended procedural wrangling and a premature appeal to this court, judgment was finally entered on April 28, 1995. Appellants filed their notice of appeal on June 5, 1995.

## DISCUSSION

### I. *The Stipulated Judgment Was Not Binding on Respondent.*

Appellants' first contention is that the stipulated judgment foreclosed respondent's right to a jury determination of the issue of Olsen's negligence as a matter of res judicata or collateral estoppel. Appellants argue that respondent "was a named party to the litigation. As a result, the judgment was res judicata not only as to Olsen, but as to all parties to the action." Appellants' sole citation of authority for this proposition is the following sentence from a legal encyclopedia: "The doctrine of res judicata precludes parties or their privies from litigating the cause of action that has been finally determined by a court of competent jurisdiction." (40 Cal.Jur.3d, Judgment, § 228, p. 637.)

We have no quarrel with this statement as a general proposition of law. When it comes to application of the statement in a particularized setting, however, we find that the statement leaves crucial questions unanswered. In this particular case of multiple defendants, one of whom stipulated to entry of judgment against himself only, the most important question is, who are "the parties or their privies" who are bound by the judgment? Appellants assert the remaining defendant is such a party, since it had notice of the proposed judgment and an opportunity to be heard before the judgment was entered. We think not, for several reasons.

First, we turn to a source of "black letter law" at least as venerable as appellants' quoted authority. Witkin says: "If an action is brought or judgment rendered against less than all [of the multiple defendants], the entry of judgment alone is not res judicata with respect to the liability of the others." (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 56, p. 116.) (Interestingly, Witkin does not give any case citations in support of the foregoing statement, citing instead to the Restatement and to other treatises. The parties on this appeal have cited no cases addressing the particular circumstances now before us. Our own research has proven no more successful.)

Second, we are aware of no procedure in the settlement process between plaintiffs and Olsen by which respondent could "be heard" on the issue of Olsen's stipulated negligence and obtain a determination that Olsen was not negligent. We have found no case in which one defendant was able to *prevent* another defendant from entering into a settlement of the action, whether by stipulated judgment or otherwise, on the basis that the settling defendant did not do anything wrong. As appellants' counsel said during trial court arguments on this issue, "I don't think there is anything [respondent] could have done."

Appellants suggest respondent could have requested a hearing on the good faith of the stipulated judgment pursuant to Code of Civil Procedure section 877.6, and that its failure to do so waived its right to be heard on the stipulated settlement. In the first place, the defendant has a constitutional right to a jury trial if there are triable issues of fact (Cal. Const., art. I, § 16), a right that would be violated by a proceeding in which disputed issues of fact are determined by the court on the basis of written declarations. (*Cottle* v. *Superior Court* (1992) 3 Cal.App.4th 1367, 1397-1398 [5 Cal.Rptr.2d 882] (dis. opn. of Johnson, J.).) In addition, the ultimate issue in a good faith hearing is the discharge of the right to indemnity or contribution. (See, e.g., *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 499

[213 Cal.Rptr. 256, 698 P.2d 159]; *Singer Co.* v. *Superior Court* (1986) 179 Cal.App.3d 875, 885-886 [225 Cal.Rptr. 159].) Such a hearing deals with likelihoods of liability and probabilities of outcomes, and is not a fair substitute for a jury determination focusing on the presence or absence of negligent acts or omissions. The trial court correctly recognized this limitation of the good faith forum.

Third, appellants confuse the "parties" to a judgment and the parties to a civil action. As a matter of due process, a "party" who is to be confronted with the res judicata effect of a judgment includes only a party who has the right to make a defense or to control the course of the proceeding. (See *Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 811 [122 P.2d 892].) Thus, in direct actions against insurers pursuant to Insurance Code section 11580, only when the insurer has provided counsel and participated in the settlement is the underlying liability issue foreclosed in a subsequent action against the company. (Compare *California State Auto. Assn. Inter-Ins. Bureau* v. *Superior Court* (1990) 50 Cal.3d 658, 665, fn. 5 [268 Cal.Rptr. 284, 788 P.2d 1156] and *National Union Fire Ins. Co* v. *Lynette C.* (1994) 27 Cal.App.4th 1434 [33 Cal.Rptr.2d 496] with *Wright* v. *Fireman's Fund Ins. Companies* (1992) 11 Cal.App.4th 998, 1016-1019 [14 Cal.Rptr.2d 588].)

Respondent had no right or duty to mount a defense on behalf of Olsen. It had no contractual right to interfere in Olsen's effort to obtain a wholly favorable settlement of this action, a settlement that let him walk away scot-free. (Cf. *Wright* v. *Fireman's Fund Ins. Companies, supra*, 11 Cal.App.4th at pp. 1005-1006, fn. 4.) Accordingly, respondent was not a "party" to the stipulated judgment, and was not bound by the determinations therein. (See *California State Auto. Assn. Inter-Ins. Bureau* v. *Superior Court, supra*, 50 Cal.3d at p. 665, fn. 5.)

Our Supreme Court has articulated the effect of a stipulated judgment in the case of one defendant whose negligence is a precondition to the liability of another defendant. (See *California State Auto. Assn. Inter-Ins. Bureau* v. *Superior Court, supra*, 50 Cal.3d at p. 665.) Although the court's discussion of this issue occurred in the context of a direct action against an insurer, the due process fundamentals are the same as in the present context. The court stated: "Our holding is a narrow one. In the case before us the insurer both participated in the settlement and signed the stipulation. If, however, the insurer had not received reasonable notice of the settlement, or were not allowed to control the insured's defense in the proceedings, any stipulated judgment would only be presumptive evidence of the insured's liability." (*Id.* at p. 665, fn. 5.)

In the present case, as we have stated above, respondent had no contractual or statutory right to control Olsen's defense of the action against him, and it did not control the defense in fact. Accordingly, the trial court did not err in according the stipulated judgment the status of "presumptive evidence of [Olsen's] liability." (50 Cal.3d at p. 665, fn. 5.)[4]

## II. *Olsen's Testimony Was Not Impermissible.*

■ Even if the *issue* of Olsen's negligence was not conclusively established by the stipulated judgment, appellants argue next, Olsen's *testimony* repudiating the recitals in the stipulation was impermissible. As discussed above, however, appellants confuse the parties to the stipulated judgment with the parties to the litigation. Respondent was a party to the action, but was not a party to the judgment.

Accordingly, Evidence Code section 622, upon which appellants rely, is inapplicable. It states: "The facts recited in a written instrument are conclusively presumed to be true *as between the parties thereto*, or to their successor in interest; but this rule does not apply to the recital of a consideration." (Italics added.) The jury trial on appellants' claim against respondent was not "between the parties" to the written document.[5]

Appellants' reliance on Evidence Code section 623 is also misplaced. That section states: "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it."

Even if it were conceded that Olsen "intentionally and deliberately led [appellants] to believe a particular thing true"—i.e., that Olsen had been negligent—"and to act upon such belief," however, the litigation between appellants and respondent was not "litigation arising out of" Olsen's judicial admissions. The litigation arose out of Olsen's conduct as a surgeon, not his statements as a litigant. Accordingly, Evidence Code section 623 is inapplicable.

---

[4]Appellants contend "that Olsen admitted his negligence, the Court entered a judgment, and then the Court acted as if nothing had happened and the slate was wiped clean. This was prejudicial error." As we have noted in the text, the court did not "wipe clean the slate." Instead, and over respondent's objection, the trial court treated the stipulated judgment as presumptive evidence of the representations stated therein.

[5]Appellants rely on *Petroleum Midway Co. v. Zahn* (1944) 62 Cal.App.2d 645 [145 P.2d 371] for the proposition that the parties can, by stipulation, limit the issues to be tried even if the stipulation is contrary to the real-world facts. We need not address this contention, since we have determined above that respondent is not a "party" bound by the stipulated judgment.

We also have a serious doubt whether Olsen's testimony had any impact on the jury favorable to respondent's position in the litigation. The stipulated judgment and Olsen's own testimony about the settlement portray him as a man willing to disregard the truth if the price was right, a man willing to sell his honor to avoid even the possibility of being held to account for his conduct. His self-serving denial of culpable conduct could not have been accepted by the jury at face value, and we think respondent hardly advanced its case by putting Olsen on the witness stand.

Although we question the need for Olsen's testimony in the present case, we are, nevertheless, concerned about the public policy ramifications of a rule that would prevent such testimony. The rule suggested by appellants would, in effect, permit one party to buy the testimony of a defendant/ witness by placing an unsworn representation into a settlement document and then precluding a subsequent under-oath repudiation of the (untrue) representation. As is evidenced by the present case, it is easy for the plaintiff to make a single defendant an offer too good to refuse. The remaining defendants' rights to due process and to a jury trial would be unduly impaired in these circumstances, with no countervailing policy benefit, by a rule that prohibited a witness from subsequently telling what he swears is the truth.

We conclude that the balance struck by the Supreme Court in *California State Auto. Assn. Inter-Ins. Bureau* v. *Superior Court, supra,* 50 Cal.3d at page 665, footnote 5, is the correct balance of the competing policies: the sanctity and solemnity of the judicial process requires that a judicial admission contained in a stipulated judgment be presumptive evidence of the facts stated therein, but the due process rights of nonsettling defendants require that contradictory evidence be permitted unless the nonsettling defendants had notice and a full opportunity to be heard at the time of the initial judicial acceptance of the admission.[6] Respondent did not have a full and fair opportunity to be heard at the time the court entered the stipulated judgment of other parties. Appellants were entitled to the evidentiary presumption arising from the stipulated judgment (which they got in this case), but respondent was not precluded from introducing sworn testimony from Olsen stating a different version of his culpability in the operation upon Mrs. Knowles.

---

[6]Appellants can find no comfort in *Estate of Gibson* (1990) 219 Cal.App.3d 1486 [269 Cal.Rptr. 48], which they cite for the proposition that a litigant who signed a stipulation in one action may be barred from testifying in contravention of the stipulation in a subsequent action to which she is not a party. In *Gibson,* the litigant bound by the judgment was a *party* in both actions. (*Id.* at p. 1493.)

### III. *Any Violation of Code of Civil Procedure Section 437c, Subdivision (k) Was Not Prejudicial.*

■ Appellants' final contention is that the court erred in permitting respondent's counsel to cross-examine appellants' medical expert with records generated by a Bakersfield Memorial Hospital doctor. The records concerned the incident in which supplemental oxygen was not provided to Knowles during transport from the operating room to intensive care on June 20, 1990. After preliminary questions about her interpretation of the records, respondent's counsel asked the witness: "[I]f these events took place, that is that she had a problem with oxygen intake on the transport from the tracheostomy to the—or to the intensive care unit resulting in the acidosis and the lowered oxygen content within her body, which showed actual symptoms, are you saying that even though those events took place and even though she had had a stroke a couple of days before,[7] are you telling us that in your opinion these events would not have altered her course in that the death was reasonably probably due to Dr. Olsen; is that what you are telling us?" The witness then stated her view that the need for the tracheostomy was a direct result of the infection, since the infection caused the respiratory failure that led to the need for ventilation and the tracheostomy.

Appellants' counsel timely objected to this line of questioning. Bakersfield Memorial Hospital and Dr. Elias previously had prevailed on summary judgment motions and were out of the case. The summary judgment motion for Bakersfield Memorial Hospital was based on uncontradicted evidence that the Bakersfield hospital had not provided negligent treatment. The judgment for Elias was based on uncontradicted evidence that his acts had not caused Knowles's death. Code of Civil Procedure section 437c, subdivision (k) (hereafter section 437c(k)) provides: "In actions which arise out of an injury to the person or to property, when a motion for summary judgment was granted on the basis that the defendant was without fault, no other defendant during trial, over plaintiff's objection, may attempt to attribute fault to or comment on the absence or involvement of the defendant who was granted the motion." Appellants contended in the trial court, and renew the contention on appeal, that the cross-examination in question was clearly an "attempt to attribute fault" to the previously dismissed defendants. The trial court ruled that showing "causation" of the injury differs from showing

---

[7]The only explanation for the stroke was provided by appellants' medical expert. There was no suggestion in the records or testimony that Bakersfield Memorial Hospital caused or was negligent in treating the stroke. Appellants' expert attributed the stroke to the infection caused by the stomach perforation. "She still had the trauma to her body with the vegetations growing on her heart valves that presumably were what caused the stroke when they broke off and went to her brain, . . . So yes, I would say all of these are related to the [infection]."

"fault"—i.e., negligence—and that causation evidence remained admissible after the summary judgment.

We will not determine whether the court's decision violated section 437c(k). The evidence in question went to the issue of causation, which the jury was never required to reach. As it was instructed, once the jury found that Olsen was not negligent, the jury returned its verdict without addressing causation.

Appellants argue that the causation evidence somehow spilled over into the negligence determination: "It was the issue of who was negligent and was there a breach [of duty] on which the jury decided. This is the issue on which appellants lost. This is the issue on which the appellants was preju-dicial [*sic*]."

We disagree. The jury was not asked to decide "who was negligent." Instead, it was asked to determine whether Olsen was negligent, a very different question. In answering that question, there was no danger the jury would decide that Olsen was not negligent because Elias was negligent. The two matters were wholly unrelated. In this context, there is no danger the jury would have disregard the court's repeated instruction that the Bakers-field Memorial Hospital records were not affirmative evidence of anything, but were merely to be considered for their value in impeaching appellants' medical expert.

Finally, appellants suggest the Legislature intended violation of section 437c(k) to be reversible error per se. Even if this argument were otherwise plausible, the argument is foreclosed by the California Constitution. Article VI, section 13 of the Constitution prohibits per se reversible error in civil cases: "No judgment shall be set aside . . . in any cause . . . for any error as to any matter of pleading or . . . procedure, unless, after an examination of the entire cause, . . . the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

### Disposition

The judgment is affirmed. Costs on appeal are hereby awarded to respon-dent.

Ardaiz, P. J., and Buckley, J., concurred.