Filed 1/19/16  Marriage of Ciliberto and Firth CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re Marriage of PATRICK CILIBERTO and KIMBERLY FIRTH. | B251411 |
| | (Los Angeles County Super. Ct. No. BD495885) |
| PATRICK CILIBERTO, | |
| Petitioner and Respondent, | |
| v. | |
| KIMBERLY FIRTH, | |
| Respondent; | |
| BRAUER LAW CORPORATION, | |
| Claimant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, David Cunningham III, Judge.  Affirmed.

Brauer Law Corporation, in pro. per.; Brauer Law Corporation and Laurel B. Brauer for Claimant and Appellant.

William W. Oxley; Broedlow Lewis, Jeffrey Lewis and Kelly Broedlow Dunagan for Petitioner and Respondent.

_____

## INTRODUCTION

A spouse involved in dissolution proceedings signed a family law attorney's real property lien (known by the unfortunate acronym FLARPL) in favor of her attorney, secured by her community property interest in the marital home. As part of the division of property in a stipulated judgment, the trial court awarded the marital home to the husband as his sole and separate property and purported to extinguish the FLARPL. The trial court subsequently granted the husband's motion to extinguish the FLARPL on the grounds the FLARPL was statutorily defective and the parties' agreement had released the lien. The wife's former attorney appeals, arguing that the declaration in support of the FLARPL was not defective, the parties' settlement agreement and stipulated judgment of dissolution did not extinguish the FLARPL, and the husband is estopped from challenging the validity of the FLARPL. We conclude that the attorney's failure to comply with the statutory requirements for a notice of a FLARPL rendered the FLARPL void, and the trial court did not abuse its discretion in extinguishing it. Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Patrick Ciliberto and Kimberly Firth were married on April 23, 1992 and separated on November 10, 2008. Ciliberto initiated marital dissolution proceedings in November 2008, and William Oxley represented him throughout the proceedings. Laurel Brauer of Brauer Law Corporation represented Firth intermittently during the proceedings.

### A. *The FLARPL*

In December 2010, in order for Brauer to continue representing her, Firth signed a declaration creating a FLARPL in the amount of $100,000 secured by her community

property interest in the marital home in Woodland Hills, California. (See Fam. Code, § 2033, subd. (a).)[1] Firth's declaration in support of the FLARPL, her first of two such declarations, stated her belief that the property "has a fair market value of at least $750,000, based upon the current selling price of comparable properties in the area," but she did not attach any supporting documentation. Although Firth was living in England at the time she signed the declaration, she did not sign her declaration before any of the officials listed in Code of Civil Procedure section 2014.[2] The notice and declaration were both dated December 8, 2010.

On December 9, 2010 Brauer served notice of the FLARPL on Oxley. Brauer filed the lien with the superior court the next day, December 10, 2010, but she did not record the lien in the County Recorder's Office. Ciliberto did not object to the FLARPL.

B. *The Deal Memo and Stipulated Judgment*

In January 2011, after negotiations among the parties, Brauer prepared a settlement agreement entitled "Deal Memo for Stipulated Judgment" that resolved the disputes of the parties. The agreement awarded the marital home to Ciliberto, "along with all encumbrances, including the HELOC [home equity line of credit] account," but the agreement did not mention the FLARPL. The settlement agreement also included a provision stating, "Each party to pay his and her own attorney's fees." Firth signed the settlement agreement on January 28, 2011, Brauer signed it on February 1, 2011, and Ciliberto and Oxley signed it on February 9, 2011.

---

[1]    All undesignated statutory references are to the Family Code.

[2]    Code of Civil Procedure section 2014 provides: "An affidavit taken in a foreign country to be used in this State, may be taken before an Embassador,[ ] Minister, Consul, Vice Consul, or Consular Agent of the United States, or before any Judge of a Court of record having a seal in such foreign country." Family Code section 2033, subdivision (b), requires the notice to contain "a declaration signed under penalty of perjury," and, Code of Civil Procedure section 2015.5 requires an out-of-state declarant to invoke "the laws of the State of California." Firth's declaration complied with these latter two requirements.

3

Because Firth had not signed her first declaration in support of the FLARPL before one of the officials listed in Code of Civil Procedure section 2014, Brauer prepared another declaration for Firth to sign. On February 18, 2011, after the parties and their attorneys had signed the settlement agreement, Firth signed the new, notarized declaration in England. Other than the new date and the notarization, Firth's February 18, 2011 FLARPL declaration was the same as her December 8, 2010 FLARPL declaration. As with her first declaration, Firth's second declaration did not include documentation to support her belief as to the fair market value of the property.

On March 9, 2011 Brauer served Oxley with an amended FLARPL. Ciliberto claims that this document consisted of the first page of the first FLARPL notice (dated December 8, 2010 and filed with the court on December 10, 2010) and Firth's February 2011 notarized declaration. Ciliberto describes this document as "Frankenstein'd" and claims that Brauer filed it hoping no one would notice she had constructed it by combining two different documents.[3]

On March 18, 2011 Brauer substituted out of the case so that Firth was representing herself, although Brauer continued to remain involved. Brauer states in her opening brief that "Oxley continued to contact [her] for help and assistance," and, to the extent she could, she "tried to assist." On March 29, 2011 Brauer filed the amended FLARPL with the trial court and on March 30, 2011 she recorded it with the Los Angeles County Recorder's Office.

On July 28, 2011 the court entered a judgment of dissolution pursuant to a written stipulation prepared by Oxley and signed by Ciliberto and Firth. The judgment provided for disposition of the marital home as follows: "The home . . . is subject to a first mortgage . . . and a home equity line of credit . . . . [¶] [Firth] transfers to [Ciliberto] as his sole and separate property, subject to any and all encumbrances/obligations against

---

[3]    "Frankensteined" means "[t]he combination of two or more similar elements into one cohesive idea, image or item that appears seamless in presentation." (See Urban Dictionary <http://www.urbandictionary.com/define.php?term=Frankensteined> [as of Sept. 9, 2005].)

4

the same, all of her rights and interest in the family residence . . . for the consideration within this judgment, and in return, [Firth] is ordered to pay, defend, indemnify and hold [Ciliberto] harmless from the payment of any debt or encumbrances against any such property.  [¶]  [Firth] is forthwith ordered to execute an Interspousal Transfer Deed, Release of Attorney Fees Lien, or similar, and deliver same to [Ciliberto] upon demand."  The judgment also stated:  "Each party will bear all of his or her own attorney fees and costs incurred in connection with the negotiation, preparation and execution of the stipulated judgment and the pending proceeding for dissolution of marriage.  As such, any Family Law Attorney's Real Property Lien is hereby extinguished."  The trial court retained jurisdiction over the parties and the real property to enforce the disposition of the property.  On July 28, 2011 the clerk mailed a notice of entry of judgment on reserved issues to Oxley and Firth (but not Brauer).

In July 2011 Oxley sent an email to Brauer stating that he had submitted the judgment but still needed Brauer's help obtaining Kim's signature on "the interspousal transfer deed . . . [and] [r]elease of [l]ien," and that Oxley "would feel more comfortable if it was signed and you held it until the judgment is filed."  According to Brauer, in August 2011 Oxley sent her copies of emails he had exchanged with Firth asking for the notarized interspousal transfer deed and the stipulation and order vacating the FLARPL.[4] Brauer did not have any further contact with Oxley until December 2011.

C.  *The Motion To Join Brauer and To Extinguish the FLARPL*

On December 19, 2011 Ciliberto filed motions to join Brauer as a party and to extinguish the FLARPL.  Ciliberto argued that the court should join Brauer as a party so

---

[4]     Although Brauer and her firm were no longer counsel of record in July 2011, they later claimed in opposition to Ciliberto's motion to expunge the FLARPL, "We hadn't seen the Judgment, but on July 12, [Oxley] emailed us that he had submitted the Judgment [and] [he] needed [Brauer's] help regarding . . . [the] Release of Lien."  Thus, the record suggests that Oxley and Brauer had discussions about the release of any lien prior to the entry of the judgment.

that she could have an opportunity to oppose the request to set aside the FLARPL. Ciliberto asked the court to extinguish the FLARPL on several grounds, including that the FLARPL was defective because the notice did not comply with Family Code section 2033, Brauer had signed the deal memo stating that each spouse would bear his or her attorneys' fees, Brauer had waived her right to enforce the FLARPL because she recorded it after the parties had entered into the settlement agreement, and the stipulated judgment extinguished the FLARPL and Firth's interest in the property. In the alternative, Ciliberto asked the court to set aside the judgment due to mistake or to award him sufficient assets to indemnify him against the FLARPL.

On March 6, 2012 Brauer filed a "position" in response to Ciliberto's motions, arguing that, as a procedural matter, she could not respond to the request to extinguish the FLARPL because she had not yet been properly joined as a party. Brauer also argued that, although Ciliberto had received the property as his sole and separate property, he had also received all the property's encumbrances, including the FLARPL. Brauer's response apparently prompted the parties to start again and submit a new round of papers, which included an "answer to verified complaint" filed by Brauer on August 16, 2012, a renewed motion to set aside the FLARPL filed by Ciliberto on October 24, 2012, a responsive declaration filed by Brauer on February 6, 2013, and a reply filed by Ciliberto on February 11, 2013.

D. *The Trial Court's Ruling*

At the February 14, 2013 hearing on the motion to extinguish the FLARPL, the court stated that its tentative ruling was to grant the motion and extinguish the FLARPL. The court stated that "the language of the deal memo which was drafted by Brauer implies that any prior [FLARPL] was to be released in favor of the express provision requiring each party to pay his or her own attorney's fees. And it does appear to the court that this interpretation is actually supported by Brauer's own opposition statements in which she repeatedly refers to comments made by herself and husband's counsel

6

regarding the planned release of the [FLARPL]. And you can see in the . . . Brauer declaration, paragraphs 10 through 12 [indicating continuing contact with Oxley] the fact that . . . even Brauer's own recitation supports the husband's position. Secondly, Brauer's failure to adhere to the statutory requirements in crafting the declaration by failing to include any documentation and [Brauer's] failure to file and record the FLARPL also speak against that."

The court further stated to Brauer, "And certainly, if you drafted [the deal memo] it destructs the enforceability and any ambiguity needs to be resolved against you. Now, there were a number of ambiguities contained within that deal memo [including] your decision not to mention the [FLARPL] combined with the express listing of the two other encumbrances and the provision regarding attorney's fees, to this court support a finding that the deal memo was intended to supersede the FLARPL. [You fail] to explain why the [FLARPL] was never mentioned in the deal memo if you were as concerned about its enforceability as you are claiming . . . and you needed to explain why the documentation requirement of Family Code section 2033, [subdivision] (b)(2), supposedly does not apply to you."

Brauer argued that, "[a]s to the no documentation in the declaration . . . the statute does not say that documentation is required. What the statute states is that . . . 'the declaration contains . . . the party's belief as to the fair market value of the property and documentation supporting that belief.' The declaration of the statute doesn't require documentation . . . and what I argue in the brief is that she didn't have any documentation. She didn't go out and get an appraisal. She didn't go and hire someone to provide her the documentation. And what we know from the Evidence Code [section 813, subdivision (a)], that owners of real property can provide their own fair market value."

The court adopted its tentative ruling to extinguish the FLARPL and denied Brauer's request for a statement of decision. The court's February 14, 2013 minute order states that Ciliberto's request to extinguish the FLARPL "is GRANTED," and that the

7

"Order regarding [the FLARPL] is signed and filed this date." The record, however, does not include this "Order regarding" the FLARPL.

There was another hearing on April 11, 2013. The minute order from that date states, "The Court signs and files a Finding and Order After Hearing regarding the hearing date of February 14, 2013." This "Finding and Order After Hearing" states that the court signed an order releasing the FLARPL, although the record does not include this order. The court also vacated its prior order precluding Ciliberto from "listing, selling, hypothecating, encumbering or transferring the property . . . ." Brauer timely appealed.[5]

## DISCUSSION

The January 2011 deal memo, drafted by Brauer, awarded Ciliberto the marital home and "all encumbrances," but the only encumbrance it specified was the home equity line of credit. It did not mention the FLARPL. It also provided that each side would bear his or her attorney's fees. The July 2011 stipulated judgment, to which Brauer was not a party and for which she was not attorney of record, confirmed the award to Ciliberto of the home, along with encumbrances and obligations, but it listed only the first mortgage and the home equity line of credit. The judgment also purported to extinguish "any" FLARPL.

---

[5]    On January 21, 2014 this court denied Ciliberto's motion to dismiss the appeal as untimely. Brauer's notice of appeal states that she is appealing from the April 11, 2013 order. Because the parties waived notice of the April 11, 2013 order, and neither the clerk nor Oxley served a notice of entry of this order, Brauer had 180 days to file a notice of appeal, or until October 8, 2013. (Cal. Rules of Court, rules 8.104(a)(1)(C) and 8.104(a)(3).) Brauer filed her notice of appeal on September 10, 2013. Oxley did submit to this court a conformed file-stamped copy of the April 11, 2013 order that he claimed he served that day, but Oxley did not sign and date the proof of service until September 18, 2013, over four months later and after Brauer filed and served her notice of appeal on September 10, 2013, and he did not file it until October 24, 2013. We do not find this proof of service sufficiently reliable to foreclose the appeal.

8

The parties dispute the meaning of these documents, and disagree whether either of them could extinguish a valid, preexisting FLARPL, particularly when Brauer was not a party to the judgment and was not attorney of record for Firth at the time. We do not resolve these issues, however, because we conclude that, by failing to comply with the statutory requirements for a FLARPL, Brauer never established a valid, preexisting FLARPL. Therefore, regardless of whether the deal memo or the stipulated judgment extinguished the FLARPL, the trial court did not abuse its discretion because Brauer did not create a valid FLARPL in the first place.[6]

A. *Family Law Attorney's Real Property Liens*

Section 2033 states the notice requirements and procedure for obtaining a FLARPL on a party's community property interest in real property, and for objecting to the lien prior before it is recorded. (§ 2033, subds. (b), (c).)[7] The family law attorney for the encumbering party must serve notice of the FLARPL on the other party's attorney of

---

[6] Ciliberto argues that Brauer "failed to appeal the July 28, 2011 judgment extinguishing the FLARPL and the time to do so has long expired." Brauer's failure to appeal from the July 28, 2011 judgment, however, does not preclude her from pursuing this appeal. Brauer was not counsel of record at the time the court entered the judgment, she was not a party to the proceedings at that time, and she did not receive notice that the court had entered it. (See *Spector v. Superior Court* (1961) 55 Cal.2d 839, 843 ["[i]t is a cardinal principle of our jurisprudence that a party should not be bound or concluded by a judgment unless he has had his day in court"]; *In re Marriage of Ramirez* (2011) 198 Cal.App.4th 336, 344-345 [order vacating FLARPL was void because court cannot extinguish a FLARPL without joining the attorney to protect his or her lien interests]; *Knowles v. Tehachapi Valley Hospital Dist.* (1996) 49 Cal.App.4th 1083, 1091 ["respondent was not a 'party' to the stipulated judgment, and was not bound by the determinations therein"].)

[7] Section 2033 provides in part:
"(a) Either party may encumber his or her interest in community real property to pay reasonable attorney's fees in order to retain or maintain legal counsel in a proceeding for dissolution of marriage . . . .

9

record at least 15 days before recording the encumbrance. The notice must include a declaration containing a full description of the real property, the encumbering party's belief as to the fair market value of the property along with "documentation supporting that belief," the amount of the attorneys' fees, and other information. (§ 2033, subd. (b); *In re Marriage of Ramirez, supra,* 198 Cal.App.4th at p. 343.) The attorney must also comply with Rule 3-300 of the Rules of Professional Conduct of the State Bar. (§ 2033, subd. (e).) Section 2033 provides for an ex parte procedure for the nonencumbering spouse to object to the lien prior to its recording. (§ 2033, subd. (c).) The ex parte objection must "include a request to stay the recordation" of the FLARPL and a copy of the notice of FLARPL the objecting party received.

---

"(b) Notice of a family law attorney's real property lien shall be served either personally or on the other party's attorney of record at least 15 days before the encumbrance is recorded. This notice shall contain a declaration signed under penalty of perjury containing all of the following:

"(1) A full description of the real property.

"(2) The party's belief as to the fair market value of the property and documentation supporting that belief.

"(3) Encumbrances on the property as of the date of the declaration.

"(4) A list of community assets and liabilities and their estimated values as of the date of the declaration.

"(5) The amount of the family law attorney's real property lien.

"(c) The nonencumbering party may file an ex parte objection to the family law attorney's real property lien. The objection shall include a request to stay the recordation until further notice of the court and shall contain a copy of the notice received. The objection shall also include a declaration signed under penalty of perjury as to all of the following:

"(1) Specific objections to the family law attorney's real property lien and to the specific items in the notice

"(2) The objector's belief as to the appropriate items or value and any documentation supporting that belief.

"(3) A declaration specifically stating why recordation of the encumbrance at this time would likely result in an unequal division of property or would otherwise be unjust under the circumstances of the case."

10

Section 2034, subdivision (a), provides in part: "On application of either party, the court may deny [a FLARPL] based on a finding that the encumbrance would likely result in an unequal division of property because it would impair the encumbering party's ability to meet his or her fair share of the community obligations or would otherwise be unjust under the circumstances of the case." Section 2034, subdivision (c), gives the family law court jurisdiction "to resolve any dispute arising from the existence of a [FLARPL]," and authorizes the court "to resolve disputes over the propriety of existing FLARPL's, whenever they may arise," even after a division of the community real property. (*In re Marriage of Turkanis & Price* (2013) 213 Cal.App.4th 332, 350-352 (*Turkanis*).) The court can revisit the propriety of a FLARPL even after it has been recorded, "when the encumbering spouse had not complied with the procedural requirements for duly recording the FLARPL, and the nonencumbering spouse want[s] to expunge the procedurally deficient FLARPL." (*Id*. at p. 351; see Hogoboom & King, Cal. Prac. Guide: Fam. Law (The Rutter Group 2015) ¶ 1:302, p. 1-103 ["a court may revisit the propriety of the lien at *any* time and, in an appropriate case, order the lien expunged"].)

A trial court's order granting a motion to expunge a FLARPL is reviewed for abuse of discretion. (*Turkanis*, *supra*, 213 Cal.App.4th at p. 345.) "In applying the abuse of discretion standard, we determine whether the trial court's factual findings are supported by substantial evidence and independently review its legal conclusions." (*In re Marriage of Drake* (2015) 241 Cal.App.4th 934, 940; *Turkanis*, at p. 345.)

B.      *The Trial Court Did Not Abuse Its Discretion in Extinguishing the FLARPL Because the Notice of the FLARPL Was Defective*

Section 2033, subdivision (b)(2), requires that the notice of the FLARPL include a declaration that contains "[t]he party's belief as to the fair market value of the property and documentation supporting that belief." The declarations signed by Firth provided a description of the property and stated her belief that the property had a fair market value

11

of $750,000 or more. Neither of Firth's two FLARPL declarations, however, provided any documentation supporting her belief. Therefore, her declarations did not comply with the statute.

Brauer argues that Firth's declaration complied with the statute because, despite the language of section 2033, subdivision (b)(2), requiring documents, "the statute does not require documents." Brauer argues that, because Evidence Code section 813 allows an owner or spouse of an owner to give an opinion on the value of property, section 2033, subdivision (b)(2), should too.

Except that it doesn't. In interpreting a statute, "we must look first to the words of the statute, 'because they generally provide the most reliable indicator of legislative intent.' [Citation.] If the statutory language is clear and unambiguous our inquiry ends. 'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' [Citations.] In reading statutes, we are mindful that words are to be given their plain and commonsense meaning. . . . Only when the statute's language is ambiguous or susceptible of more than one reasonable interpretation, may the court turn to extrinsic aids to assist in interpretation. [Citation.]" [Citation.]' [Citation.] These extrinsic or 'secondary rules of construction' include 'maxims of construction, which express familiar insights about conventional language usage; the legislative history; and the wider historical circumstances of a statute's enactment.'" [Citation.]" (*AIDS Healthcare Foundation v. State Dept. of Health Care Services* (2015) 241 Cal.App.4th 1327, 1336; see *Turkanis*, *supra*, 213 Cal.App.4th at p. 350.)

Section 2033, subdivision (b)(2), clearly and unambiguously requires supporting documentation. (See *Turkanis*, *supra*, 213 Cal.App.4th at p. 348 [because "[t]he reported case law interpreting or applying sections 2033 and 2034, or their predecessor sections, is scant," the court is "guided in large part by the plain language of the statute and analogous case law"].) It provides that a FLARPL notice "shall contain a declaration under penalty of perjury containing" five items, the second of which is "[t]he party's

12

belief as to the fair market value of the property and documentation supporting that belief." The word "shall" in a statute ordinarily refers to something that is mandatory. (*Austin v. Department of Motor Vehicles* (1988) 203 Cal.App.3d 305, 309; see *Standard Pacific Corp. v. Superior Court* (2009) 176 Cal.App.4th 828, 833 ["the usual rule [is] that 'shall' expresses a mandatory requirement"].) "The word 'shall' expresses a mandatory intent unless the legislative history of the statute where it occurs shows otherwise." (*Ovadia v. Abdullah* (1994) 24 Cal.App.4th 1100, 1109; see *Jacobs v. State Bar* (1977) 20 Cal.3d 191, 198 ["whether the word 'shall' in a statute is to be construed as mandatory or directory depends upon ascertainment of the probable legislative intent"].)

The legislative history of section 2033 does not show otherwise. To the contrary, the legislative history shows that the Legislature included the documentation requirement to ensure that the FLARPL notice gives the nonencumbering party as much detail as possible about the lien and the property.

The Legislature originally enacted the predecessors to sections 2033 and 2034, Civil Code former sections 4372 and 4373, in response to the Supreme Court's decision in *Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26. (*Lezine v. Security Pacific Fin. Services, Inc.* (1996) 14 Cal.4th 56, 68, fn. 7.) In *Droeger* the Supreme Court held that both spouses must consent to the transfer of an interest in community real property. The Legislature enacted these statutes to allow "a spouse to encumber his or her interest in community real property to pay attorney fees and costs in a dissolution action" without the consent of the other, nonencumbering spouse. (*Turkanis*, *supra*, 213 Cal.App.4th at p. 347.) The Assembly Committee of the Judiciary report commented that the statute provided an equitable balance between the need for one party to timely obtain a lien in order to secure an attorney, and the protection of the other party's community property rights. The committee report recognized that "one of the most frequently and hotly contested issues in a family law case is the value of the community residence. Appraisals of the fair market value can differ by many thousands of dollars. At the time of recording the FLARPL, however, there won't be any formal determination as to the fair market

13

value, or the community interest in, the real property." The report then stated, "In order to resolve these concerns, this bill provides for a detailed notice to the other party," in order to give "the other party sufficient information to determine if he or she should be concerned about the effect of the FLARPL on the ultimate division of community property, so he or she can timely object . . . ." (Assem. Com. on Judiciary, Analysis on Assem. Bill No. 3399 (1992 Reg. Sess.) May 6, 1992, pp. 3-4; see *Joannou v. City of Rancho Palos Verdes* (2013) 219 Cal.App.4th 746, 759 ["[r]eports of legislative committees and analysts are also useful indicators of legislative intent"]; *Mt. Hawley Ins. Co. v. Lopez* (2013) 215 Cal.App.4th 1385, 1401 [committee reports are appropriate sources to use in ascertaining the Legislature's intent].) The Legislative Counsel's Digest also reflects that the requirements of what is now section 2033, subdivision (b), were mandatory, by stating that the new statute "would require the encumbering spouse to serve the other spouse or that spouse's attorney of record notice of the family law attorney's real property lien containing specified information." (Legis. Counsel's Dig., Assem. Bill. No. 3399 (1992 Reg. Sess.) pp. 2-3; see *Mt. Hawley*, at p. 1401 ["[t]he Legislative Counsel's digest 'constitutes the official summary of the legal effect of the bill and is relied upon by the Legislature throughout the legislative process,' and thus 'is recognized as a primary indication of legislative intent'"].)

Commentators have recognized this purpose of section 2033, and that the purpose of the FLARPL declaration is to provide the nonencumbering party with sufficient information to determine whether the FLARPL attaches to more than the encumbering party's interest, and whether enforcing the lien might impair the overall equal division of community assets and debts. (Hogoboom & King, Cal. Prac. Guide: Fam. Law, *supra*, ¶ 1:293, p. 1-99.) Thus, "perfection and enforceability of the lien are subject to several 'carefully-drafted' limitations." (*Id*. at ¶ 1:291, p. 1-99.) "The notice must be accompanied by a declaration under penalty of perjury setting forth . . . [t]he encumbering party's 'belief' as to the property's *fair market value*, along with supporting 'documentation.'" (*Ibid*.; see Cal. Fam. Law Rep. – Cal. Fam. Law Prac., § A.VIII

14

[notice of a FLARPL "must include [¶] (2) [t]he party's opinion of the property's fair market value and documentation that supports that opinion"].)

Brauer argues that the requirement in section 2033, subdivision (b)(2), that the encumbering party's declaration include documentation supporting that party's belief as to the fair market value of the property, is inconsistent with the requirement in section 2033, subdivision (c)(2), that the objecting, nonencumbering party does not need to include documentation in support or his or her belief. As Brauer correctly notes, section 2033, subdivision (c)(2), requires that the nonencumbering party state only his or her "belief as to the appropriate items or value and *any* documentation supporting that belief." (Italics added.) From this difference in statutory language, Brauer argues "what's good for the goose, is good for the gander." The Legislature, however, knows the difference between geese and ganders. The language of the two subdivisions of section 2033 are indeed different, but that only shows the contrary of what Brauer argues: the Legislature differentiated between when documentation is mandatory and when it is optional, and it is mandatory in subdivision (b)(2) and optional in subdivision (c)(2). (See *Kleffman v. Vonage Holdings Corp.* (2010) 49 Cal.4th 334, 343 ["'when different words are used in contemporaneously enacted, adjoining subdivisions of a statute, the inference is compelling that a difference in meaning was intended'"]; *Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 565 ["""[w]hen the Legislature uses different words as part of the same statutory scheme, those words are presumed to have different meanings"""].) And the two subdivisions are different for a good reason. The encumbering party has the statutory obligation to give detailed information to the nonencumbering party to allow him or her to decide whether to object. Once the nonencumbering party objects and the dispute proceeds to a court hearing, both sides may introduce evidence of the fair market value of the property.

Brauer asserts that the court in *In re Marriage of Ramirez, supra,* 198 Cal.App.4th 336, indicated that section 2033, subdivision (b), requires only a declaration stating the encumbering party's belief as to fair market value, and not supporting documentation.

15

Brauer argues, "If documentation was an important component or requirement, one would think the *Ramirez* court would have said so.  They [sic] did not."  Brauer's argument is based on an unfair reading of the *Marriage of Ramirez* opinion.  Summarizing section 2033, the court in *Marriage of Ramirez* stated:  "Section 2033 sets forth notice requirements and the procedure for obtaining a FLARPL.  To be valid, a notice of lien must be served personally or on the other party's attorney of record at least 15 days before recordation.  The notice must include a description of the real property, the party's belief as to fair market value, the amount of the attorney fees and other information.  (§ 2033, subd. (b).)  Further, the statute sets forth the procedure for an objection by the unencumbering spouse.  (§ 2033, subd. (c).)  The family law court has jurisdiction to resolve any dispute arising from the existence of a FLARPL.  (§ 2034, subd. (c).)"  (*Marriage of Ramirez*, at p. 343.)  *Marriage of Ramirez*, however, did not involve the documentation requirement of section 2033, subdivision (b)(2), but rather whether an order extinguishing a FLARPL was void because the attorney who recorded it was not joined as an indispensible party (and the court held the order was void).  (*Id.* at pp. 339, 344-345.)  At the portion of the opinion cited by Brauer, the court was just giving a general outline of the statutory requirements and procedure.  And the court in its summary did state that the notice had to include "other information," which could include the documentation required by subdivision (b)(2).

Brauer argues that the supporting documentation requirement in section 2033, subdivision (b)(2), does not apply in this case because the "purpose behind the statute is to provide adequate notice," and there was "no issue" regarding whether Firth's "assessment of the value of the house and the amount of the FLARPL exceeded her [community property] interest."  Brauer asserts that "if [Ciliberto] had an issue with [Firth's] value, he could have objected.  He did not."  Ciliberto, however, did not have to object in order to challenge the FLARPL.  As noted, section 2033, subdivision (b), has several requirements for a FLARPL notice, and the statute does not excuse those requirements if the nonencumbering party does not object.  To the contrary, subdivision

(b) requires that the FLARPL notice contain the required information so that the nonencumbering party can make a determination whether to object and have the court decide the issue before the attorney records the FLARPL. Moreover, Ciliberto could still challenge the FLARPL at a later time even if the notice of FLARPL complied with the statute and he did not object at the time the attorney served it in compliance with subdivision (b). Under section 2034, the court has jurisdiction to resolve any dispute arising from the existence of a FLARPL, including after the attorney has recorded the FLARPL and after the court has awarded the property to a spouse. (See *Turkanis, supra,* 213 Cal.App.4th at pp. 350-351 ["[t]he parties engage in the ex parte objection process before the FLARPL exists, and section 2034, subdivision (c), contemplates disputes when the FLARPL is already in 'existence'"].)

Brauer cites to *Lezine v. Security Pacific Financial, supra,* 14 Cal.4th 56, in which the court stated that "the award of community real property to one spouse that is subject to a lien remains liable for satisfaction of the lien, i.e., the lien remains enforceable to satisfy the underlying debt." (*Id*. at p. 65.) That is the law. As the court in *Turkanis* stated, "[t]he court's division after trial of community or quasi-community property does not ordinarily affect the enforceability of valid, preexisting liens on the property." (*Turkanis*, 213 Cal.App.4th at p. 348; see *Ramirez*, *supra*, 198 Cal.App.4th at pp. 343-344 ["if a valid lien in favor of community property attached before the property was awarded to one spouse as separate property, the spouse received the property subject to the lien and the property remain[s] liable for satisfaction of the lien, even though the underlying debt was assigned to the other spouse"].) Brauer, however, did not have a valid lien, either before or after the division of community property.

Neither of Firth's declarations complied with the statutory requirements of section 2033, subdivision (b). Therefore, they were invalid and did not create a FLARPL on Firth's community property interest in the property. (See, e.g., *In re Scott* (N.D.Bankr. 2009) 400 B.R. 257, 263 ["[i]f the attorney asserting the lien fails to comply with the notice requirements . . . of Cal. Fam. Code § 2033, the lien will be invalid *ab initio*"].)

17

The trial court did not abuse its discretion in granting Ciliberto's motion to extinguish the FLARPL.

C.    *Equitable Estoppel Did Not Bar Ciliberto from Seeking To Extinguish the FLARPL*

Brauer argues that the trial court should have precluded Ciliberto from attempting to expunge the FLARPL because she proved all of the elements of equitable estoppel. Brauer argues that Ciliberto "knew about the FLARPL in December [2010] and was reminded again in March [2011]. He and Oxley knew about the FLARPL when negotiating the Deal Memo [in January 2011,] [a]nd they knew about the FLARPL when drafting the judgment" in July 2011. The trial court properly concluded, however, that Brauer had not proven this equitable defense.

"'[T]he doctrine of equitable estoppel is a rule of fundamental fairness whereby a party is precluded from benefiting from his inconsistent conduct which has induced reliance to the detriment of another. [Citations.] Under well settled California law four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury . . . .'" (*Turkanis*, *supra*, 213 Cal.App.4th at p. 352.) "Generally, the existence of . . . estoppel . . . is a question of fact for the trial court, whose determination is conclusive on appeal unless the opposite conclusion is the only one that we can reasonably draw from the evidence." (*Id.* at p. 353; see *Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297, 305.)

As noted, however, section 2034 authorizes the nonencumbering party to file a motion to extinguish a FLARPL at any time. Given the statutory language, Ciliberto's knowledge of the FLARPL prior to December 2011 (when he filed his first motion to extinguish) did not preclude him from exercising his right under section 2034 to move to

18

expunge the FLARPL at a later date.  Finally, with respect to the second element of estoppel, Brauer submitted no evidence that Ciliberto intended any conduct on his part to be acted upon by Brauer in any way.  There is no evidence Ciliberto consented to Brauer's FLARPL; he simply did not object when Brauer served him with her (defective) FLARPL notices.  The deal memo Ciliberto signed did not consent to or specifically mention the FLARPL, and the stipulated judgment purported to extinguish any such FLARPL.

## DISPOSITION

The order is affirmed.  Ciliberto is to recover his costs on appeal from Brauer.


SEGAL, J.

We concur:


ZELON, Acting P. J.


BLUMENFELD, J.[*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.