Filed 11/18/21  Todd v. Pacific Alliance Medical Center CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| DONALD SHERWIN TODD et al.,<br><br>   Plaintiffs and Appellants,<br><br>   v.<br><br>PACIFIC ALLIANCE MEDICAL CENTER,<br><br>   Defendant and Respondent. | B307401<br><br>(Los Angeles County<br>Super. Ct. No. BC589068) |

APPEAL from judgment of the Superior Court of Los Angeles County, John P. Doyle, Judge.  Affirmed.

Donald Sherwin Todd and Kathy Todd, in pro. per., for Plaintiffs and Appellants.

Doyle Schafer McMahon, Raymond J. McMahon and David Klehm for Defendant and Respondent.

_____

Plaintiffs Kathy Todd and her husband Donald Todd (the Todds) sued, among others, Pacific Alliance Medical Center (Pacific Alliance) after Kathy's brother, Larry Tucker, died in 2014 from arteriosclerosis.[1]  The Todds contend that Pacific Alliance was aware Tucker had an abnormal electrocardiogram (ECG or EKG) test in 2010, and failed to take appropriate steps to notify Tucker and his physician.  This appeal follows the trial court's entry of summary judgment on Pacific Alliance's amended motion for summary judgment.  Pacific Alliance amended its motion after this court previously reversed an award of summary judgment in favor of Pacific Alliance.

We reject the Todds' argument that the trial court lacked authority to consider the amended motion for summary judgment.  On the merits, we conclude the Todds fail to raise a triable issue of material fact.  Although they submitted an expert declaration, the Todds' expert relies on facts different from those alleged in the Todds' operative pleading and purports to create a duty on the part of the hospital where, as a matter of law, none exists.  Even though the Todds persuasively point out that Pacific Alliance has had a "second bit[e] at the apple" by filing two motions for summary judgment, we decline to apply the doctrine of collateral estoppel.  Remanding the case to the trial court for further proceedings when it is clear that Pacific Alliance is entitled to judgment as a matter of law would be a futile act that

---

[1]  The record refers both to "arteriosclerotic" and "atherosclerotic" heart disease.  Arteriosclerosis is a disease characterized by hardening and thickening of the arterial walls.  Atherosclerosis is a form of arteriosclerosis characterized by fatty deposits in the arteries.  (American Heritage Dictionary of the English Language (4th ed. 2000) pp. 101, 113.)

2

the law does not require.  We affirm the judgment in favor of Pacific Alliance.

## BACKGROUND

Kathy Todd's brother, Larry Tucker, was born in 1952. "Tucker[ ] died on July 24, 2014.  According to the Los Angeles County Coroner's investigation, Mr. Tucker fell down several stairs and sustained head injuries.  A call was placed to 911 and Mr. Tucker was pronounced dead at the scene.  The autopsy attributed Mr. Tucker's death to 'arteriosclerotic heart disease' and reported that his arteries were from 60% to 80% occluded.

"Mr. Tucker had been a patient of Dr. [Thick] Chow's since October 2007.  Dr. Chow's records for Mr. Tucker did not contain any complaints of chest pain or shortness of breath; nor did they report any diagnosis of heart disease.  In the year before his death, Mr. Tucker presented with complaints of back, neck and shoulder pain, flea bites, rash, and a swelling on his hand." (*Todd v. Chow et al.* (June 5, 2018, B278824, B280840) [nonpub. opn.], fn. omitted (*Todd I*).)

"Mr. Tucker's medical records included 2010 test results labeled as 'Abnormal ECG' (electrocardiogram) with a notation 'probable inferior infarct, old.'  The records also included laboratory results showing high cholesterol." (*Todd I, supra*, B278824, B280840.)  The 2010 ECG was taken at Pacific Alliance in advance of a hernia repair operation.  Dr. Felix Chi-Ming Yip performed the hernia operation on October 14, 2010.  The operation occurred at Pacific Alliance, and the Todds allege no cause of action with respect to that operation.

### 1.   *Operative complaint*

In their third amended complaint, the Todds alleged causes of action for medical malpractice and wrongful death. We summarize below those allegations pertinent to this appeal.

Dr. Chow failed to diagnose arteriosclerotic heart disease, failed to perform appropriate diagnostic tests, and failed to consult with cardiac experts. Pacific Alliance is responsible for Dr. Chow's negligent failure to diagnose, failure to perform appropriate tests, and failure to consult with experts.

On February 11, 2010, someone at Pacific Alliance performed an ECG on Tucker. Pacific Alliance learned that Tucker's ECG was abnormal. Dr. Chow also had notice of Tucker's abnormal ECG. "Dr. Chow incorrectly diagnose[d] . . . 'rotator cuff syndrome with DJD [degenerative joint disease] of the cervical spine' after receipt of the deceased['s] 'abnormal ECG report.'" (Italics omitted.) Because they knew of the abnormal ECG, both Dr. Chow and Pacific Alliance "had constructive knowledge of the possible heart condition of Larry Tucker . . . ." Pacific Alliance and Dr. Chow failed to "order additional test[s] to determine what was causing the deceased to have an abnormal ECG result[ ]."

### 2.   *Prior appeal*

In the prior appeal, we affirmed the entry of summary judgment in favor of Dr. Chow, who is no longer a party. We reversed the entry of summary judgment in favor of Pacific Alliance. We explained that Pacific Alliance failed to make a prima facie showing that the Todds could not establish liability. (*Todd I*, *supra*, B278824, B280840.)

4

First, we rejected Pacific Alliance's argument that the grant of summary judgment in Dr. Chow's favor was sufficient to carry its burden under a theory of issue preclusion to show Pacific Alliance could not be vicariously liable based on Dr. Chow's negligence. At the time of our prior opinion, the judgment in Dr. Chow's favor was also on appeal, thus not yet final for purposes of applying the doctrine of issue preclusion. As we held, "[t]he summary judgment in favor of Dr. Chow . . . afford[ed] no basis for affirming the summary judgment as to Pacific Alliance. (*Todd I*, *supra*, B278824, B280840.)

Second, we held Pacific Alliance "failed to present evidence defeating the alleged direct liability and vicarious liability for actions or omissions by employees other than Dr. Chow—and therefore did not carry its initial burden of production on summary judgment." (*Todd*, *supra*, B278824, B280840.) "In order to establish that plaintiffs could *not* establish a breach of the standard of care, Pacific Alliance was itself required to provide expert evidence of the applicable standard. It failed to do so." (*Ibid.*) By merely relying on expert opinion proffered as to Dr. Chow's conduct, Pacific Alliance did not carry its burden in moving for summary judgment based on the negligence of persons other than Dr. Chow or Pacific Alliance itself.

3. ***Amended motion for summary judgment and opposition***

Pacific Alliance filed an amended motion for summary judgment, arguing that there were no triable issues of material fact that Pacific Alliance breached a duty owed to Tucker or that Pacific Alliance caused Tucker's death.

Pacific Alliance argued now that the judgment in favor of Chow was final, Pacific Alliance could not be vicariously liable for

any negligence committed by Dr. Chow—a contention the Todds do not dispute on appeal. Pacific Alliance further argued a hospital's duty does not include diagnosing, advising, or treating patients. Pacific Alliance contended the "medical standard of care required that the decedent's physician, not [Pacific Alliance] which was the hospital where the ECG was performed, recommend any further cardiac studies if warranted." Pacific Alliance also contended it did not cause or contribute to any of the decedent's injuries.

In a declaration in support of Pacific Alliance's motion, Dr. Ryan Klein, a physician in California since 1978, stated: "Mr. Tucker's only treatment at [Pacific Alliance] was for a pre-surgical EKG prior to an outpatient hernia procedure. The EKG was performed on October 11, 2010 and showed some minor abnormalities. However, these abnormalities were not even severe enough to prevent the hernia repair surgery from going forward and Mr. Tucker was cleared for surgery by his physician who was not acting as an agent of [Pacific Alliance]."

"Larry Tucker died on July 24, 2014. The Coroner Report shows he suffered sudden death after a ground level fall down three steps. The only autopsy finding was atherosclerosis in three vessels but there was no finding of ischemic heart damage or that Mr. Tucker suffered a myocardial infarction (heart attack). It is common for atherosclerosis to be noted on an autopsy in patients who have never displayed symptoms for cardiac disease or atherosclerosis during their life because patients with atherosclerosis can live for decades without showing any symptoms of the disease."

"The standard of care does not require that [Pacific Alliance], as the hospital where the pre-operative EKG for an

6

out-patient hernia repair procedure is performed, to make a referral to a cardiologist or for additional cardiac testing unless a patient reports cardiac symptoms prior to the hernia procedure. The standard of care requires that referrals for additional medical care and treatment after medical testing, such as an EKG, are made by the patient's physician, not by the hospital where the testing was performed. Mr. Tucker did not have cardiac related symptoms that would have alerted [Pacific Alliance], its employees, or any of its agents, that Mr. Tucker may have been suffering from atherosclerotic heart disease at the time the pre-operative EKG was taken prior to the hernia repair procedure."

Dr. Klein opined "to a reasonable degree of medical probability" that "no negligent act or omission by Pacific Alliance . . . caused or contributed to decedent's death. To a reasonable degree of medical probability, [Tucker] died as a result of [a] process that would not have been detected even if a cardiology consult or cardiac testing had been ordered at or near the time of the EKG at [Pacific Alliance] in October, 2010."

### 4.    *Opposition*

The Todds opposed the amended motion for summary judgment, relying heavily on the declaration of Jennifer Lynn Cook, M.D., FAHA, FACC. The Todds argued that based on Dr. Cook's declaration, they raised triable issues of material fact supporting the inference that Pacific Alliance should have provided the ECG results to Dr. Chow and to Tucker.

7

Dr. Cook was licensed to practice medicine in Arizona and Ohio.[2] Dr. Cook "treated patients with Arteriosclerosis Heart Disease in [her] professional duties." Dr. Cook declared: "The Deceased underwent pre-operative screening on October 11, 2010 at [Pacific Alliance] where an Electro Cardio Gram ('ECG') was performed with 'abnormal results.' The ECG revealed; a Q waves in leads II, III and aVF suggesting the presence of an old inferior infarction. In addition the voltage in the precordial leads suggests the presence of left ventricular hypertrophy." Dr. Cook averred that the ECG "raises concern for underlying coronary atherosclerosis." "Larry Tucker should have had evaluation and treatment for coronary atherosclerosis after his ECG of

_____

[2] Cook attested, "Based on my Certification in Advanced Heart Failure & Transplantation (2016); Cardiovascular Disease (2007); Internal Medicine (2001)—American Board of Internal Medicine, education, training and experience, I am familiar with the standard of care for hospitals[ ] . . . in the Southern California area currently and at all times relevant in this matter."

Although Pacific Alliance correctly states that Dr. Cook is not licensed to practice medicine in California, Pacific Alliance offers no legal authority supporting the proposition that Dr. Cook was unqualified to opine on the standard of care. Interpreting the evidence in the light most favorable to the party opposing summary judgment, we conclude that Dr. Cook was generally familiar with the local standard of care. (*Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 471 [Israeli doctor could opine on standard of care for treating fractures in the United States]; *Borrayo v. Avery* (2016) 2 Cal.App.5th 304, 310–311 ["Today 'neither the Evidence Code nor Supreme Court precedent *requires* an expert witness to have practiced in a particular locality before he or she can render an opinion in an ordinary medical malpractice case.' [Citation.]"].)

8

October 11, 2010.  Doing so would have provided opportunity to restore perfusion to any remaining ischemic areas.  In my opinion Larry Tucker . . . should have had a treadmill stress test with nuclear imaging."  "Larry Tucker relied upon the medical expertise of [Pacific Alliance] to notify both the patient ('Larry Tucker'), and his primary care physician Dr. Thick Chow, M.D., of the ECG abnormal result of October 11, 2010.  The deceased, without knowledge and notice[ ] of his ECG's abnormal result, [was] denied . . . his opportunity to seek further testing and care."  Dr. Cook opined that Pacific Alliance did not comply with the standard of care and that Pacific Alliance's negligence "caused or contributed to Larry Tucker['s] injuries."

### 5.    *Prior writ proceeding*

The trial court initially denied Pacific Alliance's amended motion for summary judgment.  Pacific Alliance petitioned for writ of mandate on the ground that Dr. Cook's declaration was not signed under penalty of perjury under California law.  Following Pacific Alliance's petition for writ of mandate, this court issued the following order:  "[W]e agree with petitioner that the trial court erroneously denied petitioner's motion for summary judgment based on a declaration not signed under the penalty of perjury under the laws of the State of California.  (*Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, 618.)  The court should either have granted the motion or reconsidered it after permitting the real parties to file a further amended declaration that complies with California law.  [¶] Accordingly, the parties are notified of our intention to issue a peremptory writ in the first instance [citation], requiring respondent court to vacate its August 29, 2019 order denying petitioner's motion for summary judgment."

9

The trial court vacated its August 29, 2019 order denying Pacific Alliance's motion for summary judgment. This court then dismissed the petition as moot. Dr. Cook filed an amended declaration executed under penalty of perjury under the laws of the State of California.

**6.    *Judgment***

The trial court's tentative order, later adopted as its ruling, explains that it exercised its discretion to allow Pacific Alliance to file the amended motion for summary judgment. The trial court rejected the argument that collateral estoppel barred the amended motion for summary judgment. The court concluded that Pacific Alliance did not have a duty to report the EKG results to Tucker.

In a motion for reconsideration, the Todds argued that Dr. Cook's declaration evidenced that Pacific Alliance had a duty to notify Tucker and Dr. Chow of the ECG results. The trial court denied the Todds' motion for reconsideration. The court concluded Dr. Cook's declaration conflicted with allegations in the third amended complaint that Dr. Chow was aware of the results of the ECG. On August 12, 2020, the court entered judgment in favor of Pacific Alliance. The Todds timely appealed from the judgment.

**DISCUSSION**

Our standard of review is familiar. "A moving party is entitled to summary judgment when the party establishes that it is entitled to the entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant may make this showing by demonstrating that the plaintiff cannot establish one or more elements of all of his causes of action, or that the defendant has a

10

complete defense to each cause of action.  (*Id*. subd. (o).)  This court reviews an order granting a motion for summary judgment de novo.  [Citation.]  'We will affirm a summary judgment if it is correct on any ground, as we review the judgment, not its rationale.'  [Citation.]"  (*Marshall v. County of San Diego* (2015) 238 Cal.App.4th 1095, 1107 (*Marshall*).)  "As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority.  In other words, review is limited to issues which have been adequately raised and briefed."  (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 116, disapproved on another ground as recognized in *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 41–42.)

The Todds argue (1) the trial court erred in considering a second motion for summary judgment after this court reversed the trial court's grant of  Pacific Alliance's prior motion; (2) the trial court should have considered the standard of care in the Todds' expert's declaration, which raised material issues of fact regarding Pacific Alliance's breach of that standard of care and the cause of Tucker's demise; and (3) the second motion for summary judgment was barred by the doctrine of collateral estoppel.

## I.	The Todds Failed To Demonstrate Error in the Trial Court's Exercise of Its Inherent Discretion To Consider a Successive Motion for Summary Judgment

The Todds challenge the trial court's decision to permit Pacific Alliance to file an amended motion for summary

11

judgment.  They rely on Code of Civil Procedure section 437c, subdivision (f)(2),**3** which provides:  "A motion for summary adjudication may be made by itself or as an alternative to a motion for summary judgment and shall proceed in all procedural respects as a motion for summary judgment. A party shall not move for summary judgment based on issues asserted in a prior motion for summary adjudication and denied by the court unless that party establishes, to the satisfaction of the court, newly discovered facts or circumstances or a change of law supporting the issues reasserted in the summary judgment motion."

In *Marshall*, the appellate court rejected the argument that section 437c, subdivision(f)(2) precludes a trial court from exercising its inherent authority to "permit a party to file a successive motion for summary judgment and/or adjudication" where the successive motion was based on "evidence that was not presented in connection with a prior motion."  (*Marshall, supra*, 238 Cal.App.4th at pp. 1106, 1107.)  In *Marshall*, the trial court allowed the filing of successive motions for summary judgment and later granted those motions; the appellate court affirmed.  (*Id.* at p. 1104.)  In doing so, the appellate court reasoned although section 437c, subdivision (f)(2) restricts a party's ability to file a successive motion for summary judgment, it "does not restrict a court's inherent authority in any manner."  (*Marshall*, at p. 1106.)

Here, the trial court had inherent authority to entertain Pacific Alliance's amended motion for summary judgment. (*Marshall, supra*, 238 Cal.App.4th at p. 1106; see also *Meridian*

---

**3** Undesignated statutory references are to the Code of Civil Procedure unless otherwise indicated.

12

*Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 700, fn. 13 [Prohibition in section 437c, subdivision (f)(2) may be overcome by "exercise of judicial discretion"].)  The Todds demonstrate no error in the trial court's exercise of its inherent authority to hear Pacific Alliance's amended motion for summary judgment.  This is especially true in light of our direction to the trial court in the writ proceedings to reconsider the amended summary judgment motion upon obtaining a properly attested declaration.  (See Discussion, part III, *post*.)

The Todds correctly point out that this court previously reversed the judgment in favor of Pacific Alliance finding that Pacific Alliance failed to establish its initial burden on summary judgment.  The amended motion, however, was not based on the same evidence as the original motion.  In its amended motion, Pacific Alliance offered Dr. Klein's declaration to correct the deficiency this court identified with the original motion. Dr. Klein's declaration was a declaration from a qualified expert and was sufficient to meet Pacific Alliance's initial burden that the Todds could not establish one or more elements of their medical malpractice cause of action.  Klein opined that Pacific Alliance complied with the standard of care "in all respects, including the management of decedent—and the EKG findings." Klein further opined that "no negligent act or omission by Pacific Alliance . . . caused or contributed to decedent's death."

Finally, the Todds' reliance on *Pender v. Radin* (1994) 23 Cal.App.4th 1807, 1812 is misplaced.  In *Pender*, the trial court denied the defendant's original motion for summary judgment.  (*Id.* at p. 1811.)  The trial court then allowed the defendant to file a second motion for summary judgment.  (*Ibid*.) Applying section 437c, subdivision (f)(2), the appellate court

13

concluded the trial court did not err in considering the second motion based on newly discovered facts, which also made a "relatively new case" applicable. (*Pender*, at p. 1812.) "Because there was new information, the trial court did not abuse its discretion under the statute in allowing [the defendant] to renew her motion." (*Ibid*.)

*Pender* does not consider whether a trial court has inherent discretion to permit successive summary judgment motions even absent new facts or a change in the law. The case is not authority for a proposition not considered. (*Los Angeles County Metropolitan Transportation Authority v. Yum Yum Donut Shops, Inc.* (2019) 32 Cal.App.5th 662, 673.) *Pender* therefore does not support the Todds' argument that the trial court lacked discretion to hear Pacific Alliance's amended motion for summary judgment.

## II. The Todds Failed To Demonstrate a Triable Issue of Material Fact

A wrongful death cause of action requires showing a tort, the resulting death, and damages. (*Lattimore v. Dickey* (2015) 239 Cal.App.4th 959, 968.) The underlying tort the Todds alleged was medical malpractice. " 'The elements of a cause of action for medical malpractice are: (1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage.' [Citation.]" (*Ibid*.)

"Although hospitals do not practice medicine in the same sense as physicians, they do provide facilities and services in connection with the practice of medicine, and if they are negligent in doing so they can be held liable." (*Leung v. Verdugo Hills*

14

*Hospital* (2012) 55 Cal.4th 291, 310.)  Under California law, a hospital has a duty to prevent harm to its patients.  (*Elam v. College Park Hospital* (1982)132 Cal.App.3d 332, 340–341 (*Elam*).)  "A hospital is required to exercise the degree of care, skill and diligence used by other hospitals in similar circumstances."  (*Osborn v. Irwin Memorial Blood Bank* (1992) 5 Cal.App.4th 234, 285.)

The Todds argue that Dr. Cook's declaration establishes Pacific Alliance "breached the standard of car[e] by not informing decedents' ('Larry Tucker') or his primary care physician ('Dr. Thick Chow, M.D.[ ]')[,] of the abnormal ECG results of October 11, 2010."  The Todds maintain that Dr. Cook's declaration raises a triable issue of material fact as to whether Pacific Alliance breached that standard of care.

### A.    Even if Pacific Alliance had a duty to advise Dr. Chow of the results of the ECG, the Todds cannot demonstrate causation

The Todds' principal argument is that Dr. Cook raised a triable issue of material fact supporting the inference that Pacific Alliance violated a duty to advise Dr. Chow of the ECG results. Even if Pacific Alliance breached that asserted standard of care, the Todds cannot demonstrate the breach caused damages because they expressly allege Dr. Chow had notice of the abnormal ECG.  The Todds alleged in their operative complaint: Dr. Chow also had notice of Tucker's abnormal ECG.  "Dr. Chow incorrectly diagnose[d] . . . 'rotator cuff syndrome with DJD of the cervical spine' after receipt of the deceased 'abnormal ECG report.' "  (Italics omitted.)  Because they knew of the abnormal ECG, both Dr. Chow and Pacific Alliance "had constructive knowledge of the possible heart condition of Larry Tucker . . . ."

15

Pacific Alliance and Dr. Chow failed to "order additional test[s] to determine what was causing the deceased to have an abnormal ECG result[ ]."

In her declaration, Dr. Cook incorrectly states, "[N]either Larry Tucker or his primary physician received notice of the ECG abnormal results." This declaration contradicts an admission in the operative pleading, and as such, cannot create a triable issue of material fact. "Facts established by pleadings as judicial admissions ' "are conclusive concessions of the truth of those matters, are effectively removed as issues from the litigation, and may not be contradicted by the party whose pleadings are used against him or her." [Citations.] " '[A] pleader cannot blow hot and cold as to the facts positively stated.' " [Citation.]' [Citation.]" (*Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 746.) Because Dr. Chow had notice of the ECG results, any breach of Pacific Alliance's duty to inform Dr. Chow of the results, as a matter of law, did not cause Tucker's death.

### B. Pacific Alliance had no duty to advise Tucker of the ECG results

The remaining question is whether Pacific Alliance had a duty to notify Tucker of abnormal EKG results in the first place. The Todds argue the trial court erred in relying on *Walker v. Sonora Regional Medical Center* (2012) 202 Cal.App.4th 948 (*Walker*) to conclude Pacific Alliance did not have a duty to provide the test results to Tucker.

*Walker* considered whether a hospital that performed a cystic fibrosis screening test ordered by the plaintiff's doctor owed a duty to disclose the test results directly to the plaintiff. The purpose of the cystic fibrosis test was to detect the plaintiff's

16

genetic predisposition to having a child with cystic fibrosis. (*Walker*, *supra*, 202 Cal.App.4th at p. 953.) The plaintiff gave birth to a child with cystic fibrosis after her physician and the hospital failed to tell her she tested positive as a cystic fibrosis carrier. (*Id.* at p. 952.) In a motion for summary judgment, the hospital argued that it did not have a duty to disclose the results directly to the plaintiff. (*Id.* at p. 955.)

*Walker* affirmed the summary judgment entered in the hospital's favor, concluding that to the extent the hospital was providing only clinical laboratory services to perform a test ordered by the plaintiff's doctor, it owed a duty to send the laboratory results to the doctor only. The hospital had no affirmative duty to release the laboratory test results directly to the patient. (*Walker*, *supra*, 202 Cal.App.4th at p. 962.)

In addition to citing regulations and statutes relevant only to clinical laboratories, *Walker* relied on the following reasoning for holding the hospital did not have a duty to report test results to the patient: "[T]he physician who ordered a medical test is likely to be the professional who can best explain the meaning and significance of the test results to the patient in the context of that patient's individual circumstances. Conversely, a requirement that a hospital laboratory or its employees send reports directly to a patient or attempt to communicate complex, problematic test results directly to a patient, independently of the patient's physician who ordered the test, would appear to pose a considerable risk of confusion or misunderstanding." (*Walker*, *supra*, 202 Cal.App.4th at p. 962.) "[W]hen a laboratory test is ordered by a patient's physician, there is an existing patient-physician relationship with respect to the subject matter of the

17

laboratory test.  Hence, a direct disclosure of laboratory results to the patient might unwisely interfere in that relationship." (*Ibid*.)

*Derrick v. Ontario Community Hospital* (1975) 47 Cal.App.3d 145 is also instructive.  There, plaintiffs alleged they were exposed to a contagious disease by a minor, who had allegedly contracted that disease while a patient at the defendant hospital.  Plaintiffs further alleged the hospital and attending physician knew about the patient's contagious condition.  In reviewing a demurrer ruling, the appellate court declined to impose a duty on the hospital to inform the minor patient or her mother that the minor had a contagious disease because "that duty might substantially interfere with the relationship between the patient and her attending physician." (*Id*. at p. 154.)

Turning to this case, Pacific Alliance cites no evidence and makes no argument that it served merely as a clinical laboratory when Tucker underwent a hernia operation there in 2010.[4]  Even if Pacific Alliance was not merely a clinical laboratory, we find *Walker*'s rationale persuasive, particularly its discussion that disclosure of test results directly to the patient might unwisely interfere in the doctor patient relationship.  Tucker had a relationship with Dr. Yin who successfully performed the hernia

---

[4] A " '[c]linical laboratory' means any place used, or any establishment or institution organized or operated, for the performance of clinical laboratory tests or examinations or the practical application of the clinical laboratory sciences.  That application may include any means that applies the clinical laboratory sciences." (Bus. & Prof. Code, § 1206, subd. (a)(8).)

In contrast, to the definition of clinical laboratory in the Business and Professions Code, Health and Safety Code section 1250 provides definitions of different types of hospitals.

procedure in 2010, and with Dr. Chow, his doctor since 2007, who knew of Tucker's 2010 abnormal ECG. Pacific Alliance had no duty under these circumstances to disclose the ECG results directly to Tucker where it is undisputed that at the time the ECG was taken, Tucker had existing patient-physician relationships with Dr. Yin and Dr. Chow, and the Todds have admitted Dr. Chow knew about the ECG results.[5]

We reject the Todds' argument that *Walker* is "completely contradictory" to the evidence that they presented by way of Dr. Cook's declaration. Duty is a question of law for the court to decide, not a question of fact subject to resolution by way of expert declarations. (*Walker*, *supra*, 202 Cal.App.4th at p. 958; *Elam*, *supra*, 132 Cal.App.3d at p. 339 [duty is "question of law within the exclusive province of the court"].) Dr. Cook's declaration cannot raise a triable issue of material fact as to Pacific Alliance's duty to Tucker. The Todds do not otherwise challenge the application of *Walker* to this case.

In sum, the Todds raise no triable issue of material fact showing that Pacific Alliance breached any duty to report to Dr. Chow causing Tucker's death and, as a matter of law, Pacific Alliance did not have a duty to report the ECG test result to Tucker. The trial court did not err in granting summary judgment in favor of Pacific Alliance.

---

[5] We do not opine on whether a hospital may have a duty to disclose test results when obtaining a patient's informed consent. Tucker's informed consent with respect to his hernia operation is not at issue in this appeal, and the Todds have made no argument based on obtaining informed consent.

## III. Principles of Collateral Estoppel Do Not Require the Reversal of the Judgment

The trial court rejected the Todds' argument that collateral estoppel precluded consideration of Pacific Alliance's amended summary judgment motion: "Collateral estoppel does not apply because the court of appeal merely found that Defendant [Pacific Alliance] did not meet its burden for the initial motion because it had failed to provide admissible evidence. Such ruling does not preclude the instant Motion which is an attempt to remedy Defendant's prior error. In fact, had collateral estoppel applied, it is unclear why the court of appeal would have recently issued an alternative writ allowing for the Court to grant the instant Motion." On appeal, the Todds assert this was error.

Collateral estoppel, also known as issue preclusion, "prevents 'relitigation of issues argued and decided in prior proceedings.' [Citation.] The threshold requirements for issue preclusion are: (1) the issue is identical to that decided in the former proceeding, (2) the issue was actually litigated in the former proceeding, (3) the issue was necessarily decided in the former proceeding, (4) the decision in the former proceeding is final and on the merits, and (5) preclusion is sought against a person who was a party or in privity with a party to the former proceeding. [Citation.]" (*Castillo v. City of Los Angeles* (2001) 92 Cal.App.4th 477, 481.)

" 'Importantly, "collateral estoppel is not mechanically applied, and in each case the court must determine whether its application will advance the public policies which underlie the doctrine. [Citation.] Those policies are '(1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the

judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation.' " [Citations.]' [Citation.]" (*Mooney v. Caspari* (2006) 138 Cal.App.4th 704, 717; see also *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 829 ["[E]ven where the minimal prerequisites for invocation of the doctrine are present, collateral estoppel ' "is not an inflexible, universally applicable principle; policy considerations may limit its use where the . . . underpinnings of the doctrine are outweighed by other factors." ' [Citation.] [Citations.]".)

Even if arguably, Pacific Alliance's amended summary judgment motion is based on the same issue as the prior motion, we decline to apply collateral estoppel because that doctrine's underlying purposes would not be served. Although the trial court initially denied the amended motion for summary judgment, this court created confusion, at least on the part of the trial court, when we ordered the trial court to reconsider the amended motion. After the trial court did precisely what we ordered—reconsidering the amended summary judgment motion after receiving a properly attested declaration—it granted that motion, finding no triable issue of material fact. On appeal, the Todds identify no triable issue of material fact.

Under these circumstances, reversing the grant of summary judgment on issue preclusion grounds and returning the case to the trial court would be a futile act because there is nothing left to decide in a trial. The law does not require a futile act. (See generally, Civ. Code, § 3532 ["The law neither does nor requires idle acts"].) Permitting a trial on the merits where the Todds have demonstrated no triable issue of material fact would undermine the policy of promoting judicial economy by minimizing repetitive litigation. For these reasons, even

21

assuming the Todds could demonstrate the elements of collateral estoppel, we decline to apply that doctrine here.  (Cf. *Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 945 [declining to apply collateral estoppel where application of doctrine is not supported by policy reasons].)  Although we recognize the tragic nature of Tucker's death, after review, we conclude the Todds have not demonstrated any error on appeal.

## DISPOSITION

The judgment in favor of Pacific Alliance Medical Center is affirmed.  The parties shall bear their own costs on appeal.
NOT TO BE PUBLISHED.


BENDIX, J.

We concur:



ROTHSCHILD, P. J.



CHANEY, J.